IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHEVRON PIPE LINE COMPANY,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>PACIFICORP dba ROCKY MOUNTAIN POWER,<br><br>　　　　　　　Defendant. | **SEALED**<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION TO COMPEL RETURN OF DOCUMENT INADVERTENTLY PRODUCED, FOR PROTECTIVE ORDER, AND TO EXCLUDE REFERENCE AT TRIAL TO INADVERTENTLY DISCLOSED DOCUMENT**<br><br>Case No. 2:12-cv-287-TC-BCW<br><br>District Judge Tena Campbell<br><br>Chief Magistrate Judge Brooke Wells |

　　　District Judge Tena Campbell has referred this case to the undersigned pursuant to 28 U.S.C. §636 (b)(1)(A).[1] Before the Court is Chevron Pipe Line Company's ("Chevron") Motion to Compel Return of Document Inadvertently Produced, for a Protective Order, and to Exclude Reference at Trial to Inadvertently Disclosed Document ("Motion").[2] The Motion has been fully briefed by the parties and the court heard oral argument on February 17, 2015.  At the hearing, Chevron was represented by attorneys George M. Haley, Engels Tejeda, Craig D. Galli, and Megan J. DePaulis.  Pacificorp dba Rocky Mountain Power ("RMP") was represented by James Jardine, Robert Harrington, and Rick Rose.  At the conclusion of oral argument, the Court took the Motion under advisement.  Since that time, the Court has further considered the parties' arguments made in their briefs and at oral argument along with relevant facts and case law. The

---

[1] Docket no. 95.

[2] Docket no. 125.

court has also reviewed *in camera* the document that is the subject of the Motion.  Because the Court finds that the document at issue is not protected by the attorney-client privilege, work product doctrine or Utah Rule of Evidence 508, the Motion is DENIED.

## RELEVANT BACKGROUND[3]

This case is the result of an oil spill that impacted Red Butte canyon, creek, and surrounding areas in Salt Lake City.  According to Chevron, "[o]n Friday, June 11, 2010, at approximately 9:10 p.m., an overgrown vegetation near a RMP electrical transition station caused an electrical current to be transmitted through a fence post and onto the top of a pipeline owned and operated by Chevron, causing an oil spill. A group of citizens impacted by the spill brought suit against Chevron and RMP in 2012.[4]   The citizens' claims against Chevron and RMP have been settled[5] and this litigation essentially continues for apportionment of fault purposes between Chevron and RMP.

In connection with this litigation, Chevron has produced over 1.5 million pages of documents.  To assist with this large document production, Chevron retained an outside company that specializes in large-scale document management to help it respond to numerous discovery requests. The outside company assigned approximately fifty (50) contract attorneys to conduct an initial review of Chevron's database for responsive documents.

At issue in this motion is the fate of one document titled "Draft Root Cause Analysis" ("Draft Report").  The Draft Report is approximately three pages in length and was inadvertently

---

[3] This is a very complex case that has spanned over three years with the underlying oil spill occurring almost six years ago.  The Court has reviewed and considered the extensive background the parties have provided in their respective briefs in relation to this Motion as well as the procedural history of the lawsuit. While the Court appreciates the background provided by the parties, for brevity, the Court incorporates in its decision only those facts that it finds relevant to its determination.

[4] *See* docket nos. 2 and 4.

[5] Docket no. 120.  ("Defendant CPL's counterclaim against Defendant RMP, and Defendant RMP's cross-claim against Defendant CPL are not dismissed).

2

produced as part of Chevron's document production. The Draft Report was attached to an email dated June 23, 2010 that was circulated among an internal investigation team assembled by Chevron in response to the oil spill. The email, which was circulated among non-lawyers, included the following statement on its subject line and body: "PRIVILEGED AND CONFIDENTIAL/ATTORNEY CLIENT COMMUNICATION/ATTORNEY WORK PRODUCT/PREPARED AT REQUEST OF COUNSEL." A copy of the email was not produced to RMP, but was included on the Privilege Log. The Draft Report contains a summary of the evidence gathered, background information on the pipe line, a detailed description of the oil spill and an analysis of potential cause of the spill and other conclusions drawn by the investigative team.

Attached to Chevron's Motion is a Declaration by Attorney Craig Galli, who was retained by Chevron shortly after the spill was reported to assist Chevron in identifying the cause of the oil release and any responsible third parties. On June 13, 2010, Chevron through its Senior Counsel, Tana Daughtrey issued a "Root Cause Investigation Legal Charter" which memorialized the purpose of Chevron's investigation of the spill and how the investigation was to be conducted. In relevant part, the Charter provides:

> On behalf of the Global Upstream and Gas Law Department, ***in anticipation of litigation and for purposes of evaluating Chevron's possible legal exposure, if any, and legal rights and obligations,*** I am appointing the Team identified below to conduct to conduct a root cause analysis ("RCA") investigation of the facts and circumstances of the rupture of a 10 inch oil pipeline and resulting oil spill that occurred on or about June 11, 2010 near Red Butte Canyon, Salt Lake City, Utah.
> ….
> All communications, reports, notes, documents, photographs, or other evidence gathered or prepared by the Team should be treated as highly confidential and clearly marked:
>
> > **PRIVILEGED AND CONFIDENTIAL/ATTORNEY CLIENT COMMUNICATION/ATTORNEY WORK PRODUCT/ PREPARED AT REQUEST OF COUNSEL**

> …
> As you proceed with your investigation, please focus on the facts and do not inject speculation into your notes or other written material. Also, please do not necessarily generate written work product.
>
> …When you are not working on these materials, they should be kept in a secure location. In addition, when you are discussing your investigation with me or members of the Team, you should take precautions to make sure you are not being overheard. ***Any privileges that may apply to your work product may be waived by inadvertent disclosure***.[6]

In addition to the language contained in the Root Cause Investigation Charter, Mr. Galli's Declaration makes clear the root cause analysis and subsequent report was generated for multiple purposes including litigation. According to Mr. Galli, the root cause analysis was to "form the first step in the internal investigation" to evaluate the cause of the spill for reasons such as potential litigation, potential regulatory enforcement actions and "to represent Chevron in discussions with government agency personnel."

Chevron argues that once the Draft Report was discovered to be inadvertently disclosed, RMP should have returned it pursuant to Rule 26(b)(5)(B). Chevron argues that this document is protected by the attorney-client privilege, work product doctrine and Utah's Environmental Self-Evaluation Privilege. RMP disagrees based largely on the multiple purposes for which this document was created and contents of the Draft Report itself. The parties have met and conferred over their disputes. Having not being able to resolve the dispute, this motion followed.

## ANALYSIS

"The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing either or both are applicable."[7] In support of its position that the Draft Report is protected from disclosure, Chevron argues that the Draft Report

---

[6] Exh. B., Galli Declaration, docket no. 128 (emphasis added).

[7] *Barclaysamerican Corp. v. Kane*, 746 F.2s 653, 656 (10th Cir. 1984).

4

was created at the direction of counsel with the primary motivating factors behind its creation being administrative, legal and investigative. Therefore, because this document was created at the behest of counsel with litigation in mind, it ought to be protected from disclosure because it is protected by the attorney-client privilege, work product doctrine and Rule 508 of the Utah Rules of Evidence.

### A. Waiver

At the outset, the Court notes that it is not persuaded by RMP's arguments that Chevron somehow waived any assertion of privilege because it failed to take prompt steps to rectify the disclosure of the Draft Report. The Court is also not persuaded that the disclosure of the Draft Report in connection with the filing of this motion waived any assertion of privilege. Upon review of the procedural history of the case along with the stay of discovery that occurred during the mediation process, the Court finds any delay in notifying RMP of the privileged nature of the Draft report or by disclosing this document as part of this Motion was reasonable and did not waive any purported privilege. Having made those findings, the Court will now analyze whether the Draft Report is protected from disclosure by the attorney-client privilege, work product doctrine and Utah Rule of Evidence 508.

### B. Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."[8] "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[9] As the 10th Circuit has recognized,

---

[8] *Upjohn v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677 (1981).

[9] *Id*.

> [t]he attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor. The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege, rather, the communication between a lawyer and client must relate to legal advice or strategy sought by the client.[10]

In a corporate setting, "[a] party may successfully demonstrate applicability of the privilege to written communication between corporate and management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice."[11] Further, "…documents may be protected if they were created as part of a legal investigation. This includes documents where neither the creators, senders, nor the recipients are lawyers."[12] "But, the protection of corporate documents is not without exception. [D]ocuments are not protected if they relate to business agreements with unrelated third parties or general business or technical matters."[13] Moreover, "[f]or a communication between non-attorney employees to be held privileged, it must be apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice or the document itself must reflect the requests and directions of counsel."[14]

Here, Mr. Galli's declaration establishes that the Draft Report was transmitted from a non-lawyer to other non-lawyers. As the foregoing makes clear, the fact that the document was not authored by an attorney does not bar protection by the attorney-client privilege. But, in examining the Draft Report, the Court finds there is insufficient evidence to demonstrate that it is protected by the attorney-client privilege. First, despite the language and purported litigation

---

[10] *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010)(internal quotations and citations omitted).

[11] *Brigham Young University v. Pfizer*, No. 2:06-890-TS, 2011 WL 2795892 at *3 (D. Utah, July 14, 2011)(unpublished)(citations omitted).

[12] *Id*.

[13] *Id*.

[14] *Adams* at *11.

purpose contained in the Root Cause Investigation Charter, the Draft Report itself does not indicate that litigation was the driving reason behind its creation.  First, the document is not dated and makes no mention of anticipated or potential litigation and makes no statements about requests or directions of counsel.  Further, at the bottom of the document in small print in the left hand corner is the word "Confidential" despite the directive in the Legal Charter that the document be labeled "**PRIVILEGED AND CONFIDENTIAL/ATTORNEY CLIENT COMMUNICATION/ATTORNEY WORK PRODUCT/ PREPARED AT REQUEST OF COUNSEL.**"  All of this evidences to the Court that the Draft Report falls outside of the attorney-client privilege protection.

   Further, as the undersigned articulated in the *BYU v. Pfizer* decision, documents are not protected if they relate to general business or technical matters.  As explained in more detail below, upon review of the document, it is clear that content of the Draft Report suggests that the primary reason it was created was to determine the cause of the spill.  While this determination may have been made with litigation in mind, it is not clear from the document itself that litigation or legal advice were the sole reasons for its creation.  The Court understands and has considered the strongly policy considerations raised by Chevron that companies need to be able to freely examine the causes and consequences of situations such as the oil spill that occurred in this case.  But, the Draft Report itself does not adequately evidence the requisite requirements for a document to be shielded by the attorney-client privilege.  Therefore, despite what Chevron may have intended, the evidence before the Court leads the conclusion that Chevron has not satisfied its burden as to its claims of attorney-client privilege with regard to the Draft Report.

C. **Work Product**

Generally, the work product doctrine "…is designed to balance the demands of the adversary system by preserving the privacy an attorney requires to prepare for trial. In order for materials to be protected under the doctrine, they must be 'prepared in anticipation of litigation or for trial….'"[15] In *McEwen*, Judge Greene adopted the "primary motivating purpose" test for determining whether a document prepared for mixed purposes (as the Court finds to be the situation presented in the instant case) is entitled to protection under the work product doctrine. As articulated by Judge Greene, "[i]f it appears that the materials were prepared for mixed purposes, the privilege is available only if 'the primary motivating purpose behind the creation of the [materials was] to assist in pending or impending litigation…'"[16] Further, as Magistrate Judge Nuffer articulated in *Adams*, "[i]f there is an independent sound reason for the document's creation—a business purpose—and the document does not reflect the assembly and sifting of information by counsel, or preparation and legal strategy, then there should be no 'work product' protection."[17]

Here, the Court has absolutely no doubt that the Draft Report was created with potential litigation in mind. However, the Court is not persuaded that litigation was the "primary motivating purpose" of this document. This is true in light of the very strong evidence RMP has presented with regard to environmental regulations Chevron had to comply with and Chevron's overarching concerns at the time the spill occurred. Namely, Chevron had legitimate business purposes for the creation of the Draft Report. Chevron was rightly concerned about determining the cause of the spill in order to prevent further leakage and prevent future events from

---

[15] *McEwen v. Digitran Systems, Inc.,* 155 F.R.D. 678, 682 (D. Utah 1994)(citing F.R.C.P. 26(b)(3)).
[16] *Id.*
[17] *Adams* at *10.

occurring. In addition, upon review, despite the alleged purposes contained in the Legal Charter, the Draft Report contains no language that suggests a particular litigation strategy nor due to the collaborative manner in which this document was created, is it clear if any of the conclusions are explicitly made by counsel or are included solely for counsel to form a *litigation* strategy.

Lastly, the Court is persuaded by the reasoning contained in the *Settoon* decision cited by RMP where no work product privilege was found based on similar facts.[18] Accordingly, the Court adopts the following language and conclusion made by the *Settoon* Court:

> [w]hile counsel may have sincerely desired to keep this work confidential, such a desire alone is insufficient to cloak the effort and related documentation in the work product privilege. It is likewise clear to this Court from its review of all the evidence before it that [the Draft Report]…would have come into being regardless of whether litigation was possible or anticipated, and that they are therefore not subject to the work-product privilege."[19]

Thus, in line with the reasoning of this Court's previous decisions and the *Settoon* Court, the Court finds the Draft Report is not entitled to protection of the work product doctrine.

**D. Utah Rule of Evidence 508**

Lastly, Chevron argues that the Draft Report is protected from disclosure by Utah Rule of Evidence 508. In pertinent part, Rule 508, Environmental Self-Evaluation Privilege states:

(a) Definitions.
> (5) "Environmental self-evaluation" means a self-initiated assessment, audit, or review, not otherwise expressly required by an environmental law, that is performed to determine whether a person is in compliance with environmental laws. A person may perform an environmental self-evaluation through the use of employees or the use of outside consultants.

(b) Statement of Privilege.
> (1) A person for whom an environmental self-evaluation is conducted or for whom an environmental audit report is prepared has a privilege to

---

[18] Civil Action Nos. 13-2809, 13-3197, 2015 WL 65357 (E.D. Louisiana, Jan. 5, 2015)(unpublished).

[19] *Id*. at * 12.

9

> refuse to disclose, and prevent any other person from disclosing, an environmental audit report.
> ….
> (c) Exceptions to the Privilege. The privilege does not apply in the following circumstances:
> > (6) Required by Law. If the document *or information* is specifically required to be available or furnished to a regulatory agency by an environmental law or any other law or rule.[20]

RMP argues that this rule does not apply because Chevron has pled federal question jurisdiction therefore federal law of privilege applies instead of state law. In addition, RMP argues Rule 508 would not apply because the information in the Draft Report was required by law.

Here, the Court finds RMP's second argument to be persuasive. Therefore, the Court will not make a determination with regard to RMP's first argument against application of Utah Rule of Evidence 508. RMP has cited at least two federal regulations that require the information Chevron produced in the Draft Report to be compiled.[21] Based upon the requirements of those regulations and *the information* contained in the Draft Report, the Court finds that an exception to the 508 privilege applies because the information contained in the Draft Report was required to be furnished to a regulatory agency by law. Therefore, for essentially the same reasons as articulated in RMP's Opposition Memorandum with regard to RMP's second argument regarding the applicability to Utah Rule of Evidence 508,[22] the Court finds that the privilege does not apply in this case with these particular facts.

---

[20] Utah Rule of Evidence 508 (emphasis added).

[21] *See* 49 C.F.R. § 195.50 and §195.402(c)(5).

[22] *See* Opp. Mem. At pp. 23-24.

**CONCLUSION & ORDER**

For the foregoing reasons, the Court finds that the Draft Report is not protected by the attorney-client privilege, work product doctrine or Utah Rule of Evidence 508. Therefore IT IS HEREBY ORDERED that the Motion to Compel Return of Document Inadvertently Produced, for a Protective Order, and to Exclude Reference at Trial to Inadvertently Disclosed Document[23] is DENIED.

Because the Court has denied Chevron's Motion, the Court is inclined to unseal the Motion and this Order. However, it will permit either party to show cause why these documents shall remain under seal. If the Court has not received an objection to unsealing by March 1, 2016, the Court will enter an Order lifting the seal on this Motion, Order and the document in question. "The party objecting should bear in mind that the court will maintain the seal on the motion, [order] and document only if unsealing these materials would disclose confidential investigative techniques [not previously disclosed], reveal information that would jeopardize an ongoing investigation, or injure nonparties."[24]

**IT IS SO ORDERED.**

DATED this 22 February 2016.

_Brooke C. Wells_
Brooke C. Wells
Chief United States Magistrate Judge

---

[23] Docket no. 125.

[24] *United States ex rel. Wickliffe v. EMC Corp.*, No. 1:06-cv-64-DAK, 2009 WL 911037 at *6 (D. Utah, Mar. 30, 2009)(unpublished)(citing *Jessop v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002); *United States ex rel. Yannacoplous v. General Dynamics*, 457 F.Supp.2d 854, 858-59 (N.D.Ill. 2006)).

United States District Court
for the
District of Utah
February 22, 2016

\*\*\*\*\*\*MAILING CERTIFICATE OF THE CLERK\*\*\*\*\*\*

RE:   Hayes et al v. Chevron Pipe Line Company
      2:12cv287 TC-BCW

George M. Haley
HOLLAND & HART (UT)
222 S MAIN ST STE 2200
SALT LAKE CITY, UT 84101

James S. Jardine
RAY QUINNEY & NEBEKER (SLC)
36 S STATE ST STE 1400
PO BOX 45385
SALT LAKE CITY, UT 84145-0385

Richard E. Sarver
BARRASSO USDIN KUPPERMAN FREEMAN & SARVE
909 POYDRAS ST 24TH FL
NEW ORLEANS, LA 70112

Larry E. Mobley
BALDWIN HASPEL BURKE & MAYER LLC
1100 POYDRAS ST STE 3600
NEW ORLEANS, LA 70163

R. Jeff Richards
ROCKY MOUNTAIN POWER
201 S MAIN STE 2400
SALT LAKE CITY, UT 84111

_____

Aimee Trujillo