IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHEVRON PIPE LINE COMPANY,<br><br>        Plaintiff,[1]<br><br>vs.<br><br>PACIFICORP, d/b/a ROCKY MOUNTAIN POWER,<br><br>        Defendant. | **ORDER AND<br>MEMORANDUM DECISION**<br><br>Case No. 2:12-CV-287-TC |

On June 11, 2010, in the foothills of Salt Lake City, Utah, approximately 800 barrels of crude oil leaked from a pipeline owned by Chevron Pipe Line Company (CPL) into Red Butte Creek and migrated into the Liberty Park pond. The Pipeline and Hazardous Materials Safety Administration (PHMSA) investigated and concluded that an electrical arc from an electrical transition station owned by Rocky Mountain Power (RMP) created a hole in the pipeline which caused the oil to leak. PHMSA imposed penalties on CPL. CPL paid the fines and conducted a costly cleanup.

Approximately sixty homeowners along the path of the spill sued CPL and RMP for damages. CPL and RMP filed claims against each other. Now that the original plaintiffs have

---

[1] Chevron Pipe Line Company and Pacificorp d/b/a Rocky Mountain Power were originally co-defendants and counter/cross-claimants in this suit brought by a group of plaintiffs who have since settled the lawsuit. For the sake of simplicity, the court refers to CPL and RMP respectively as Plaintiff and Defendant.

settled, CPL seeks payment from RMP on the theory that RMP's negligence caused all or part of the costs that CPL incurred responding to the spill.

Trial is not on the horizon. But RMP has moved[2] for a preliminary ruling that four investigative reports and orders issued by PHMSA are admissible under Federal Rule of Evidence 803(8), titled "Public Records."

The investigative reports and orders were created in connection with PHMSA's investigation of the oil spill. CPL, the subject of the investigation, opposes admission of the evidence on the basis that the documents do not satisfy the elements of Rule 803(8) and, under Federal Rule of Evidence 403, any probative value the documents may have is outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

For the reasons set forth below, the court holds that the PHMSA Documents are admissible under Rule 803(8) with the caveat that redactions within those documents may be necessary to avoid other potential evidentiary problems. Possible curative measures may be addressed shortly before trial begins.

## BACKGROUND

The Executive Summary of the PHMSA investigative report states that "[a] large electrical charge was introduced to a fence directly over Chevron's pipeline. The charge jumped from a metal fence post to Chevron's pipeline causing an ~1" hold in the fence post and an ~1/2"

---

[2]Both parties submitted supplemental briefs to the court during briefing of the motion. (See Supplement to Rule 104 Mot., Docket No. 152; Supplement to Chevron Pipe Line Company's Mem. in Opp'n to Def. Rocky Mountain Power's Rule 104 Mot., Docket No. 145.) Because the court did not give either party permission to file the supplemental documents, the court will not consider the supplemental briefs in its analysis.

hold near the 12:00 position on the pipe. The leak occurred near a small creek that runs through a high density populated area. The crude followed the creek to a pond where most of it was captured." (Apr. 14, 2011 PHMSA Failure Investigation Report at 2, Ex. E to RMP's Rule 104 Mot., Docket No. 123.)

The day after the spill, PHMSA, as part of its regulatory responsibilities, began investigating the cause of the spill and whether CPL had violated regulations that govern pipelines. As part of the United States Department of Transportation, PHMSA is authorized by statute to regulate gas pipeline facilities. It does not regulate electrical facilities such as the one from which the electrical arc originated.

Over the course of PHMSA's investigation and subsequent enforcement action against CPL, it created four documents that RMP now asks the court to admit into evidence. Those documents (the "PHMSA Documents" or "Documents") were created between October 2010 and April 2011:

1. PHMSA Pipeline Safety Violation Report, dated October 20, 2010 ("Violation Report");

2. PHMSA Notice of Probable Violation, dated November 1, 2010 ("Probable Violation Notice");

3. PHMSA Final Order, dated February 17, 2011 ("Final Order"); and

4. PHMSA Failure Investigation Report, dated April 14, 2011 ("Final Investigation Report").

(See Exs. B-E attached to Rule 104 Mot.) According to RMP, those documents are "directly relevant to RMP's claims and defenses in this action, . . . contain factual findings regarding the

cause of the spill[], explain regulatory and internal policy violations committed by CPL that contributed to or affected the spill, and outline CPL's required corrective action." (Id. at ii-iii.) The key issues in this case are the alleged negligence of CPL and RMP, and the comparative fault of each. RMP identifies a series of factual findings in those documents that it wants to use during trial to establish that CPL was negligent in connection with the spill. (See id. at iv; RMP Reply at 12, Docket No. 148.)

The following is a summary of the documents. Significantly, PHMSA's findings and conclusions about CPL's conduct did not substantively change from the initial report to the final report, as is evident from the document descriptions below.

1.   PHMSA Pipeline Safety Violation Report, dated October 20, 2010[3]

PHMSA drafted this report (the Violation Report) soon after it completed its investigation. The Violation Report summarizes facts gathered during that investigation (both from on-site investigation and review of CPL documents, such as internal policies and procedures). It lists four violations, the regulations that were violated, the evidence supporting each finding of a violation, the action that resulted in the violation, and the proposed action for each violation.

   a.   *Violation Number 1*

PHMSA concluded that CPL violated 49 C.F.R. § 195.402, titled "Procedural manual for operations, maintenance, and emergencies," which reads as follows:

>   (a)   *General.* Each operator shall prepare and follow for each
>         pipeline system a manual of written procedures for

---

[3]This is attached as Ex. B to the Rule 104 Motion.

>>conducting normal operations and maintenance activities and handling abnormal operations and emergencies;

> . . . .

> (c) *Maintenance and normal operations.* The manual required by paragraph (a) of this section must include procedures for the following to provide safety during maintenance and normal operations; . . . .

>> (3) Operating, maintaining, and repairing the pipeline system in accordance with each of the requirements of this subpart and subpart H of this part.

According to PHMSA, CPL violated the regulation because it did not follow the procedure for patrolling its pipeline right-of-way. PHMSA proposed a civil penalty and issuance of compliance order.

        b.    *Violation Number 2*

PHMSA maintained that CPL violated 49 C.F.R. § 195.575, titled "Which facilities must I electrically isolate and what inspections, tests, and safeguards are required?" That regulation requires that:

> (e) if a pipeline is in close proximity to electrical transmission tower footings, ground cables, or counterpoise, or in other areas where it is reasonable to foresee fault currents or an unusual risk of lightning, you must protect the pipeline against damage from fault currents or lightning and take protective measures at insulating devices.

According to PHMSA, CPL violated the regulation because it "did not install any devices to protect the pipeline against damage from fault currents." (Violation Rep. at 10.) PHMSA proposed a civil penalty and compliance order.

      c.     *Violation Number 3*

PHMSA contended that CPL violated 49 C.F.R. § 195.452, titled "Pipeline integrity management in high consequence areas," which includes the following language:

> i)     What preventive and mitigative measures must an operator take to protect the high consequence area?
>
> . . . .
>
> (3)     Leak detection.  An operator must have a means to detect leaks on its pipeline system.  An operator must evaluate the capability of its leak detection means and modify, as necessary, to protect the high consequence area.  An operator's evaluation must, at least, consider the following factors—length and size of the pipeline, type of product carried, the pipeline's proximity to the high consequence area, the swiftness of leak detection, location of nearest response personnel, leak history, and risk assessment results.

According to PHMSA, CPL violated the regulation because

> Chevron did not have a method of leak detection that was able to detect the release of crude oil on June 11, 2010.  Chevron had been aware since 2007 that a better leak detection methodology was needed, but did not implement improvements until after the incident.

(Id. at 16.)  As with the other violations, PHMSA proposed a civil penalty and compliance order.

      d.     *Violation Number 4*

PHMSA contended that CPL violated 49 C.F.R. § 195.250, titled "Clearance between pipe and underground structures."  That regulation reads:

> Any pipe installed underground must have at least 12 inches (305 millimeters) of clearance between the outside of the pipe and the extremity of any other underground structure, except that for drainage tile the minimum clearance may be 12 inches (305 millimeters) of clearance is impracticable, the clearance may be reduced if adequate provisions are made for corrosion control.

According to PHMSA, CPL violated the regulation because "Chevron's Crude Oil #2 pipeline had a fencepost installed within 3 inches of it." (Id. at 21.) PHMSA proposed issuance of a warning.

2. PHMSA Notice of Probable Violation, dated November 1, 2010

[4] In this document (Probable Violation Notice), which was sent to CPL, PHMSA set forth proposed penalties based on each violation listed in the Violation Report. The Notice gave CPL the opportunity to challenge the investigators' findings of fact and conclusions that CPL violated the regulations. No further action or evaluation was necessary to finalize the Notice: the "probable violations" were based on information set out in the Violation Report. No fact or conclusion in the Violation Report changed in the Probable Violation Notice.

3. PHMSA Final Order, dated February 17, 2011[5]

In this document, PHMSA noted that Chevron did not challenge the contents of the Violation Report. Based on that lack of opposition, PHMSA issued the final order, and the proposed penalties became final.

4. PHMSA Failure Investigation Report, dated April 14, 2011[6]

This document is a wrap-up, or summary, of the investigation.

\* \* \*

After PHMSA issued its Final Order, CPL paid the penalties. CPL also cleaned up the contaminated site. After CPL settled with private litigants, it pursued its action against RMP,

---

[4]This is attached as Ex. C to the Rule 104 Motion.

[5]This is attached as Ex. D to the Rule 104 Motion.

[6]This is attached as Ex. E to the Rule 104 Motion.

alleging negligence and seeking reimbursement for some, if not all, of the cleanup costs. RMP made a similar claim against CPL, arguing that CPL's negligence caused the damage. Now RMP asks the court to adjudicate the admissibility of the four documents described above.

## ANALYSIS

The key issues in this case are whether CPL was negligent, whether RMP was negligent, and, if so, the relative fault of CPL and RMP. This case is not nearing trial (in fact, no trial date has been set). But RMP has raised a preliminary question about the admissibility of the four PHMSA Documents. Under Rule 104 of the Federal Rules of Evidence, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). According to RMP, "[a] determination on admissibility will clarify issues for discovery and expert preparation, make trial preparation more focused, and inform potential settlement discussions." (Rule 104 Mot. at ii.) To that end, RMP asks the court to hold that the PHMSA Documents are admissible under Federal Rule of Evidence 803(8), "Public Records.

**A.    Public Records Exception Under Rule 803(8)**

RMP asserts that the documents are admissible under Rule 803(8) of the Federal Rules of Evidence, also known as the "Public Records" exception to the rule against the admissibility of hearsay evidence. Under that exception, a "record or statement of a public office" is admissible in a civil case if "it sets out . . . <u>factual findings from a legally authorized investigation</u>," and the party against whom the evidence is being offered "does not show that the source of information or other circumstances indicate a lack of <u>trustworthiness</u>." Fed. R. Evid. 803(8) (emphasis

added).[7]

### 1. Factual Findings of a Public Office

Under the first element of Rule 803(8), the party offering the document into evidence must show that the document was issued by a public office or agency and contains factual findings resulting from a legally authorized investigation. Id.

    a.    Public Office

The parties do not dispute that PHMSA is a public agency that conducted a legally authorized investigation. The Pipeline Safety Act grants the Department of Transportation (DOT) authority to prepare and issue evaluative reports, like the PHMSA Documents. See 49 U.S.C. § 60101, et seq. The Act provides that "[a]n officer, employee, or agent of the Department of Transportation designated by the Secretary [of Transportation] . . . may enter premises to inspect the records and property of a person at a reasonable time and in a reasonable way to decide whether a person is complying with this chapter and standards prescribed or orders issued under this chapter." 49 U.S.C. § 60117(c). The DOT delegated this authority to PHMSA:

> Officers, employees, or agents authorized by the Associate Administrator for Pipeline Safety, PHMSA . . . are authorized to enter upon, inspect, and examine, at reasonable times and in a reasonable manner, the records and properties of persons to the extent such records and properties are relevant to determining the compliance of such persons with the requirements of 49 U.S.C. 60101 et seq., or regulations or orders issued thereunder. . . . Inspections are ordinarily conducted

---

[7]The current version of Rule 803(8) amended the language of the old Rule 803(8), but it did not make any substantive changes. Many of the cases cited in this order apply the earlier version of the Rule (then known as Rule 803(8)(C)), which identifies three elements necessary for admissibility: the report was issued by a public office or agency "pursuant to authority granted by law" that contained factual findings resulting from an investigation made pursuant to that legal authority, under circumstances that do not indicate a "lack of trustworthiness." See Perrin v. Anderson, 784 F.2d 1040, 1046 (10th Cir. 1986).

pursuant to one of the following: . . . <u>Pipeline accident or incident</u> . . . .

49 C.F.R. § 190.203(a) (emphasis added).  Accordingly, federal law authorizes PHMSA to inspect pipeline accidents and issue documents—like the PHMSA Documents—in response to these accidents.

      b.      <u>Factual Findings</u>

CPL asserts that the Documents are inadmissible because they contain opinions and conclusions.  Although the Documents do contain conclusions and opinions, the United States Supreme Court holds that because such conclusions are based on facts that were established as part of an investigation, they are "factual findings" under Rule 803(8).  In <u>Beech Aircraft Corporation v. Rainey</u>, 488 U.S. 153 (1988), the Court held that

> portions of investigatory reports otherwise admissible under [Rule 803(8)] are not inadmissible merely because they state a conclusion or opinion.  <u>As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report</u>.

<u>Id.</u> at 170 (emphasis added).

The Tenth Circuit has also "admitted conclusions and opinions found in evaluative reports of public agencies" under Rule 803(8).  In <u>Perrin v. Anderson</u>, 784 F.2d 1040, 1047 (10th Cir. 1986),[8] the plaintiffs brought a 42 U.S.C. § 1983 civil rights act on behalf of their son who was shot and killed by an officer of the Oklahoma Highway Patrol.  The Tenth Circuit affirmed the district court's admission of a Shooting Report issued by the Oklahoma Highway Patrol Shooting Review Board.  The report concluded that there was "'no doubt that [the officers] acted

---

[8]<u>Perrin</u> was cited in <u>Beech Aircraft</u>, 488 U.S. at 162 n.7.

within the guidelines set forth in the Policies and Procedures Manual.'" Id. at 1046 (quoting report). The Tenth Circuit noted that "although the Shooting Report contained conclusions concerning the propriety of [the defendant officers'] conduct, the report comes within the scope of Rule [803(8)]," because the conclusions were based on factual findings made during the investigation of the officer-involved shooting. Id. at 1047.

Here, PHMSA's Documents are based on facts gathered during PHMSA's investigation of the oil spill. Under Beech, they contain factual findings as defined under Rule 803(8).

### 2. Trustworthiness[9]

Courts consider a non-exclusive list of factors to determine whether a document is trustworthy. The Advisory Committee for the Federal Rules of Evidence suggests four criteria: "the timeliness of the investigation; the special skill or experience of the investigator; whether a hearing was held and the level at which it was conducted; and any possible motivation problems in the preparation of the report." Id. Some courts also consider the finality of the report as a factor to consider when assessing trustworthiness. See, e.g., Gentile v. Cty. of Suffolk, 129 F.R.D. 435, 458 (E.D.N.Y. 1990) (adding "finality of findings" to the Advisory Committee's four criteria for trustworthiness). No single factor is dispositive. "Trial courts traditionally have been granted broad discretion to use their 'common sense' in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its

---

[9]RMP, in its discussion of trustworthiness under Rule 803(8), notes that the Pipeline Safety Act, 49 U.S.C. § 60101, et seq., supports a finding that the PHMSA Documents are inherently trustworthy and so are admissible under Rule 803(8). That Act expressly provides that such documents "may be used in a judicial proceeding resulting from the accident." 49 U.S.C. § 60117(e)(1).

admission." Id. at 448-49 (internal citations and quotation marks omitted).

CPL, as the opponent of the evidence, has the burden of showing "that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Civ. P. 803(8)(B); see also, e.g., Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 778 (9th Cir. 2010) ("A party opposing the introduction of a public record bears the burden of coming forward with enough negative factors to persuade a court that a report should not be admitted.") (internal citation and quotation marks omitted); Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 805 F.2d 49, 54 (2d Cir. 1986) ("'There must be an affirmative showing of untrustworthiness'") (quoting Kehm v. Proctor & Gamble Mfg. Co., 724 F.2d 613, 618 (8th Cir. 1983)). CPL's burden is substantial because "[a]n authorized report of a government agency is assumed to be trustworthy absent evidence to the contrary." Gentile, 129 F.R.D. at 449.

Looking at the first factor, the court finds that the timeliness of the investigation does not pose a problem here. And the parties do not dispute that. The PHMSA issued its initial report (the Violation Report) approximately four months after the oil spill. It is clear from that report that PHMSA inspectors were on site one day after the spill. (See Violation Report at 1 (listing date of inspection as June 12, 2010).) And less than two weeks after PHMSA issued the Violation Report, it sent its November 1, 2010 Notice of Probable Violation to CPL. After CPL had an opportunity to respond to the allegations in the Violation Notice, PHMSA issued its February 17, 2011 Final Order. Without admitting fault, CPL agreed to pay a fine, take action on problems identified by PHMSA, and clean up the contamination. Approximately ten months after the oil spill, PHMSA issued its final report. (See Apr. 14, 2011 PHMSA Failure Investigation Report, Ex. E to Rule 104 Mot.) The investigation and enforcement process

steadily progressed, and there was no apparent delay in fact gathering.  Accordingly, the timeliness factor does not weigh in favor of CPL's assertion that the Documents are untrustworthy.

As for the second factor, it is not disputed that PHMSA is the federal agency charged with overseeing pipeline safety issues, including CPL's pipeline.  But CPL contends that "there is no evidence that the PHMSA employees involved in the investigation are qualified to opine" on what CPL identifies as the "key issue in this case": the "relative fault of CPL and RMP."  (CPL Mem. Opp'n to Rule 104 Mot. at 13, Docket No. 133.)  CPL's argument misses the mark because the factual findings and conclusions in the Documents do not address issues of negligence or relative fault.  They address whether the facts within the scope of the agency's jurisdiction show a violation of DOT regulations.  This factor does not weigh in CPL's favor either.

Pointing to the third factor—the availability of a hearing—CPL contends that the lack of a formal hearing is reason for the court to find the Documents untrustworthy.  CPL also asserts that even if a hearing had been held before the PHMSA, such a hearing would not have been sufficient to establish trustworthiness of the Documents because CPL would not have been able to cross-examine authors of the reports or apply formal rules of evidence.  CPL's argument is not persuasive.

Lack of a hearing is not necessarily dispositive of a report's trustworthiness.  See, e.g., Bank of Lexington & Trust Co. v. Vining-Sparks Sec., Inc., 959 F.2d 606, 617 (6th Cir. 1992) (Rule 803(8) "makes no reference to such a requirement; the factor appears only to be one of those suggested by the Advisory Committee.") (internal citation and quotations marks omitted).

Significantly, CPL had the opportunity to have a hearing before PHMSA but waived that right. In a letter to PHMSA, CPL wrote, "CPL has elected not to contest the alleged violations and will provide electronic payment in the amount of $423,600. By not contesting the [PHMSA] allegations, CPL does not admit the accuracy of the allegations or the factual assertions set out in the [Probable Violation Notice]." (Dec. 2, 2010 Ltr. from CPL to PHMSA at 1, Ex. F to Rule 104 Mot.)

Even if CPL had followed through with an administrative hearing without the full host of procedural safeguards typically present in a court setting, the lack of cross-examination would not render the Documents untrustworthy. The court in Kehm v. Procter & Gamble Mfg. Co., 724 F.2d 613 (8th Cir. 1983), rejected a similar argument:

> Procter & Gamble argues that the studies are untrustworthy . . . because it was unable to cross-examine the sources interviewed for the studies . . . . We reject this argument because it altogether ignores the rationale behind the hearsay exceptions—that a statement which carries other indicia of reliability is admissible for precisely that reason, despite the declarant's unavailability for cross-examination. That is, a party which would exclude evidence falling within the apparent scope of one of the hearsay exceptions must make an affirmative showing of untrustworthiness, beyond the obvious fact that the declarant is not in court to testify. Indeed, if this court were to accept Procter & Gamble's argument, it would have to hold public reports such as these inadmissible in every case where the opposing party had not had the chance to examine every person in the statistical pool the report covers.

Id. at 618-19 (internal citation omitted); see also Gentile, 129 F.R.D. at 456 ("'[r]equiring that the government report of an investigation be based on an evidentiary hearing providing an opportunity for cross examination would rob [Rule 803(8)] of any practical utility.'") (quoting In re Japanese Elec. Prods., 723 F.2d 238, 268 (3d Cir. 1983)).

Along similar lines, CPL contends that, even if the Documents are admissible under Rule

14

803(8), the written opinions and conclusions of PHMSA employees are inadmissible. According to CPL, the Documents are "'only admissible to the extent that the maker of [the] document could testify to that evidence were he present in court.'" (CPL's Opp'n Mem. at 11 (quoting In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, 720 F. Supp. 1493, 1497 (D. Colo. 1989).) CPL points to DOT regulation 49 C.F.R. § 9.9, titled "Legal proceedings between private litigants," which provides that "[a]n employee shall not testify as an expert or opinion witness with regard to any matter arising out of the employee's official duties or the functions of the Department." 49 C.F.R. § 9.9(c) (emphasis added). That regulation bars employee testimony in private litigation. It follows, CPL asserts, that no PHMSA employee can testify about the opinions and conclusions in the Documents so RMP cannot satisfy the admissibility requirement in In re Air Crash Disaster. (CPL Opp'n Mem. at 11.)

CPL's argument is foreclosed because Rule 803(8) does not require the declarant to testify about the contents of the document. Section 9.9(c) has no bearing on the court's determination of admissibility. The court also notes that the regulation was issued before the statute allowing the PHMSA documents to be used in private litigation (see 49 U.S.C. § 60117(c)). The statute trumps the regulation.

Another factor courts consider is whether the motivation for issuing the documents is questionable. Neither party raises bias as an issue, so the court will only briefly address this factor. Bias can indicate lack of trustworthiness. "By bias the courts and the Advisory Committee [of the Federal Rules of Evidence] refer principally to reports compiled in anticipation of litigation." Gentile, 129 F.R.D. at 457. Here, the Documents were not prepared in anticipation of litigation between CPL and PHMSA. And nothing in the record brings into

question the impartiality of the PHMSA and its employees' investigation and enforcement of PHMSA regulations.

Finally, CPL asserts that two of the PHMSA Documents—the Violation Report and the Probable Violation Notice—are preliminary and so are not trustworthy. The only language in the Violation report that is tentative is the term "Proposed Action." But that does not mean the information in the report is unsettled. The facts were settled and there was nothing left to investigate. In the Probable Violation Notice, PHMSA told CPL that PHMSA had determined that CPL had violated four different regulations. Because PHMSA allowed CPL an opportunity to contest the factual findings and conclusions, PHMSA could not officially conclude at that point that the violations had occurred. But CPL's waiver of its opportunity to contest essentially finalized PHMSA's tentative conclusion that CPL violated four regulations.

Numerous courts have held that a report is trustworthy even though it is called a preliminary or interim report. See, e.g., English v. Dist. of Columbia, 651 F.3d 1, 8 (D.C. Cir. 2011) (holding that interim report was sufficiently final to qualify for admission under Rule 803(8), and finding significant the fact that author had no intention of revising his report after he submitted it to his superiors for review); In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation, 681 F. Supp. 2d 141, 154-55 (D. Conn. 2009) (admitting preliminary report under Rule 803(8), the court noted that the document was sufficiently final despite the fact that "provisional allegations were subject to further review by the Commission before any sanctions [were] levied."); Gentile, 129 F.R.D. at 458 (admitting preliminary report containing findings that were not in draft form); Kehm v. Procter & Gamble Co., 580 F. Supp 890, 901 (N.D. Iowa 1982) ("[T]he fact that the . . . studies are preliminary does not affect their admissibility, but goes

to their weight."); see also Jama v. U.S. I.N.S., 334 F. Supp. 2d 662, 677-79 (D.N.J. 2004) (holding that "interim assessment report" created as part of a "program review and investigation" of a detention center contained factual findings under Rule 803(8)).

CPL cites to an unreported decision, In re Cessna 208 Series Aircraft Prods. Liability Litigation, Case No. 05-md-1721-KHV, 2009 WL 2780223 (D. Kan. Sept. 1, 2009), to support its position that the Violation Report and the Probable Violation Notice are not trustworthy. But In re Cessna is distinguishable. There, the findings were subject to revision and further review. In essence, the findings were a draft. Here, the Violation Report and Probable Violation Notice were not drafts. The investigation was complete, the findings arising out of the investigation were complete, and the suggested violations were not tentative. The only remaining step was to hold a hearing (if CPL elected to participate in one) to allow CPL to challenge the factual findings. The record shows that PHMSA had no intention of changing its findings short of evidence from CPL generated during a hearing that convinced PHMSA that its factual findings and conclusions were incorrect.

For all of the reasons set forth above, the court finds that the PHMSA Documents are trustworthy. CPL has not satisfied its burden to provide affirmative evidence of untrustworthiness. Accordingly, the PHMSA Documents are admissible under Rule 803(8).

B. **Balancing Probative Value With Prejudice Under Rule 403**

CPL argues that even if the documents are admissible under Rule 803(8), they should be excluded under Federal Rule of Evidence 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence." Fed. R. Evid. 403.

CPL says the probative value of the Documents is negligible because they do not evaluate the relative fault of CPL and RMP, PHMSA did not investigate or make any findings about RMP's role in the incident, and evidence contained in the Documents can be presented to the jury in another form. "For example, RMP may offer copies of CPL's right of way inspection procedures into evidence to show their existence and terms. And it may call CPL's representatives to testify at trial on whether or how CPL complied with those procedures." (CPL Opp'n Mem. at 7.) But, as RMP points out,

> CPL's argument that the PHMSA Documents "do not evaluate the relative fault of CPL and RMP for the spill" actually favors admission of the PHMSA Documents. Because PHMSA was not weighing the degree of culpability between CPL and RMP for the spill, CPL cannot argue that the PHMSA Documents invade the province of the jury or suggest what conclusion the jury should ultimately reach. The PHMSA Documents instead provide factual findings that are relevant to determining CPL's negligence.

(RMP Reply Mem. at 11-12, Docket No. 148.)

CPL maintains that any probative value the Documents may have is outweighed by the danger of unfair prejudice. According to CPL, the Documents will "mislead the jury into believing that a government agency found CPL solely liable for the spill," (CPL Opp'n Mem. at 6), and would suggest to the jury that it should reach the same conclusion reached by PHMSA's experts. But RMP persuasively counters CPL's concern: "the PHMSA Documents contain no analysis of relative fault or of RMP's conduct, nor would a jury draw such a conclusion from them. The PHMSA Documents contain factual findings relating to CPL's conduct. CPL can and will present evidence of its claims of negligence on the part of RMP and argue relative fault, and there is little risk of jury confusion." (RMP Reply Mem. at 15.)

CPL expresses concern that PHMSA was charged with focusing exclusively on CPL's conduct, so the Documents are an incomplete picture of the situation:

> PHMSA conducted its investigation and drafted the PHMSA Reports in the immediate aftermath of the oil spill. Consequently, the Reports may contain accurate descriptions of events or conditions that existed temporally close to the oil spill. But the PHMSA allegations and findings were based on a limited investigation that did not include a full historical review of the events that led to the spill. In discovery in this case, facts have come to light showing, for example, that CPL identified RMP's electrical transition station as an encroachment and asked RMP to move it, but that RMP refused. PHMSA uncovered no such facts in its limited investigation, and this evidence contradicts PHMSA's allegations. . . . [T]he incomplete PHMSA allegations—and absence of a fully developed record—render the PHMSA Reports inadmissible under Rule 403.

(CPL Opp'n Mem. at 8.) But the limitations identified by CPL can be countered sufficiently to avoid any unfair prejudice. Nothing in the PHMSA Documents forecloses's CPL's right to present admissible evidence that rebuts findings in the PHMSA documents. CPL can also argue to the jury that the PHMSA Documents tell only one side of the story and that RMP's actions led to the oil spill.

In short, the probative value of the PHMSA Documents is not outweighed by any prejudice they may pose. Nevertheless, the court will allow the parties to submit proposed redactions right before trial to address other evidentiary concerns—such as double hearsay—as well as a proposed cautionary instruction to the jury,[10] if such an instruction is needed.[11]

---

[10]An instruction to the jury is another way to lessen any prejudicial effect on CPL. For instance, in Perrin, the Tenth Circuit found that a cautionary instruction to the jury alleviated any prejudice that may have occurred when the district court admitted a government agency investigative report. "[T]he district court instructed the jury that the report was 'an agency hearing of its own personnel and for its own purpose' and was to have no 'determinative effect on any issue in the case.' We believe that the cautionary instruction mitigated any prejudice the report may have had." Perrin, 784 F.2d at 1047 (also noting that "judge may caution jurors against substituting official's judgment for their own") (citing 4 J. Weinstein & M. Berger,

19

**ORDER**

For the reasons set forth above, the court holds that the following documents are admissible at trial, with the caveat that redactions and a jury instruction may be necessary to reduce other evidentiary concerns: (1) PHMSA Pipeline Safety Violation Report, dated October 20, 2010; (2) PHMSA Notice of Probable Violation, dated November 1, 2010; (3) PHMSA Final Order, dated February 17, 2011; and (4) PHMSA Failure Investigation Report, dated April 14, 2011.

SO ORDERED this 22nd day of April, 2016.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

---

Weinstein's Evidence ¶ 803(8)[03], at 803-257 (1985)).

[11]"Government accident investigation reports are generally admissable [*sic*] under the public records exception; portions of those reports or exhibits may present other hearsay problems, however. Evidence reported in a government document is only admissable [*sic*] to the extent that the maker of document could testify to that evidence were he present in court.
Where investigators rely on hearsay and non-hearsay in compiling a report, the court may review and edit certain portions of the report, rather than excluding the entire exhibit. Edited portions of the report remain admissable [*sic*] because Rule 803(8) attaches an assumption of trustworthiness to the government investigation as a whole. Courts have admitted exhibits to accident investigation reports on this basis." In re Air Crash Disaster at Stapleton Int'l Airport, 720 F. Supp. 1493, 1497 (D. Colo. 1987) (internal citations omitted).