IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| CHEVRON PIPE LINE COMPANY,<br><br>Plaintiff,[1]<br><br>vs.<br><br>PACIFICORP, d/b/a ROCKY MOUNTAIN POWER,<br><br>Defendant. | **ORDER AND<br>MEMORANDUM DECISION**<br><br>Case No. 2:12-CV-287-TC |

Plaintiff Chevron Pipe Line Company (CPL) seeks $30 million in damages from

Defendant Pacificorp d/b/a Rocky Mountain Power (RMP) resulting from an oil spill in Salt

Lake City, Utah. CPL brings a claim for contribution under the federal Oil Pollution Act (OPA)

as well as state law claims for negligence, trespass, and nuisance.

In two motions for summary judgment, RMP asks the court to dismiss the claims. (See

Mot. Summ. J. for Failure to Prove Amount of Damages, ECF No. 237 ("Damages Motion");

Mot. Summ. J. on OPA, Negligence, Trespass, and Nuisance Claims, ECF No. 236 ("RMP's

OPA Motion").) CPL counters with a motion for partial summary judgment focused on its OPA

claim. In that motion, CPL asks the court to hold that CPL has a right to contribution from RMP

under the OPA, that CPL may recover the categories of damages identified in its motion, and that

---

[1]Chevron Pipe Line Company and Pacificorp d/b/a Rocky Mountain Power were originally co-defendants and counter/cross-claimants in this suit brought by a group of plaintiffs who have since settled the lawsuit. For the sake of simplicity, the court refers to CPL and RMP respectively as Plaintiff and Defendant.

the jury need only determine what percentage of fault is attributable to RMP. (See Mot. Partial

Summ. J. on CPL's OPA Claim, ECF No. 225 ("CPL's OPA Motion").)

For the reasons set forth below, the court concludes that RMP is not entitled to summary

judgment on either of its motions. As for CPL's motion, the court grants it in part. Specifically,

the court holds that the OPA provides an independent right to contribution. But the court

declines to hold that CPL has established a right to contribution from RMP, that CPL may

recover the damage categories it has identified, or that the only issue left for the jury is

apportionment of fault.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2010, in the foothills of Salt Lake City, an electrical arc from RMP's electrical

transition station (ETS) created a hole in CPL's underground oil pipeline.[2] Crude oil leaked into

Red Butte Creek and flowed into Liberty Park Lake and the Jordan River.

The Pipeline and Hazardous Materials Safety Administration (PHMSA) designated CPL

as the "Responsible Party" under the OPA.[3] CPL cleaned up the spill and conducted remediation

activities under the direction of government regulators.

According to CPL, "[a]n oil spill response in public waterways is led by a Unified

Command, which here consisted of representatives from the state agencies, federal agencies,

CPL and the incident commander. Government regulators were intimately involved in the

---

[2]The ETS was built adjacent to CPL's underground pipeline. Both parties built their structures within non-exclusive easements received from the property owner.

[3]See 33 U.S.C. § 2701(32)(E) (defining "responsible party" to include an owner or operator of an oil pipeline); 33 U.S.C. § 2702(a) (making a "responsible party" strictly liable for cleaning up and remediating harm resulting from an oil spill).

process and [in] determining the clean-up work to be performed." (CPL's Opp'n to Damages Motion at 11 (internal citation omitted), ECF No. 261.) A CPL employee summarized the process:

> Once the Unified Command agreed upon the objectives for that day, logistics people would work to obtain the necessary resources . . . . CPL did the work necessary to comply with regulatory requirements because "under Unified Command, everyone must agree before you go forward" – the state and federal agencies had to "sign off on everything."

(Id. at 11–12 (quoting Dep. of Lloyd Watkins), ECF No. 268.) In addition to its clean-up and remediation activities, CPL responded to individual claims and to regulators, who investigated, claimed reimbursement for costs, ordered payment of damages, and assessed penalties against CPL.

In March 2012, people living along the path of the spill (the Homeowners) sued CPL and RMP in the case now before the court. They asserted claims for negligence, trespass, and nuisance. Although they originally filed a claim under the OPA, they dismissed that claim.

CPL then filed a counterclaim against RMP alleging negligence, trespass, private nuisance, and a right to contribution under the OPA. (See CPL's Am. Counterclaim Against Defendant Pacificorp, ECF No. 63.) CPL alleged that "RMP's acts and omissions proximately caused the electrical arc to burn a hole in CPL's pipeline, leading to the release of approximately 800 barrels of oil near or into Red Butte Creek." (Id. ¶ 29.) CPL asserts that RMP must reimburse CPL for "all or part of the costs incurred by CPL in responding to the spill." (Id. ¶ 30.) In response, RMP filed a Notice and Cross-Claim for Apportionment of Fault under the Utah Liability Reform Act (ULRA). (See ECF No. 92 at 6–7.)

Ultimately, CPL settled with the Homeowners, who then dismissed their claims against

CPL and RMP.  RMP did not participate in the settlement.

CPL seeks approximately $30 million in damages, which are summarized in a spreadsheet and divided into five categories: (1) Emergency Response and Cleanup Costs paid to CPL Contractors, Vendors, and Suppliers; (2) Emergency Response and Cleanup Costs for CPL Labor and Expenses; (3) Payments to Local, State and Federal Agencies; (4) Payments and Settlements With Private Parties; and (5) costs incurred during Post-Closure Activities.  (See Ex. 2 attached to CPL's Mot. Partial Summ. J. on OPA Claim, ECF No. 225-2.)  To support its damages claim, CPL proffers the testimony of three witnesses and documentation, including 16,000 invoices and settlement agreements.

One of those witnesses is Dr. Edward Owens.  According to CPL,

> Dr. Edward Owens, CPL's timely disclosed expert[4] in emergency oil spill response operations, will provide testimony regarding the appropriateness of the type and amount of resources expended after the spill, the process by which contractors were engaged and resources were expended, whether costs were consistent with industry standards, and whether costs were as expected for a[n] oil spill of that scale and scope[.]

(CPL's Opp'n to Damages Motion at pp. 5-6 ¶ 4.)  CPL also cites to the anticipated fact witness testimony of two CPL employees.[5]  Lloyd Watkins will testify about "the expenses invoiced and paid by CPL and the process by which contractors were engaged and resources were expended during the clean up[.]"  (Id. at p. 5 ¶ 2.)  James Myers will describe "the process by which

---

[4]RMP contends that the relevant content of Dr. Owens' opinion was not timely disclosed. The court addresses that below.

[5]RMP asserts that because Mr. Watkins and Mr. Myers provided deposition testimony as Rule 30(b)(6) witnesses, CPL may not use their testimony at trial.  (See Reply in Supp. of Damages Motion at 7, 7 n.3 (citing Fed. R. Civ. P. 32(a)(3)).)  But CPL overcomes RMP's objection by noting that Mr. Watkins and Mr. Myers have personal knowledge of the information presented during their depositions and will testify as fact witnesses.

contractors were engaged and resources were expended during the clean up[.]" (Id. at p. 5 ¶ 3.)

RMP challenges CPL's evidence of damages in one motion, and in another motion, targets CPL's entire case. Specifically, RMP asserts that CPL's claim for damages fails as a matter of law because none of CPL's proffered evidence satisfies CPL's burden of proof. (See Damages Motion.) In the other motion for summary judgment, RMP asks the court to dismiss all of CPL's claims because (a) the OPA does not allow CPL to recover its damages unless CPL proves that the spill was solely caused by RMP, which CPL cannot prove given documents demonstrating CPL's fault; (b) the tort claims fail because they are barred by the ULRA; (c) CPL's allegations do not establish key elements of nuisance and trespass; and (d) two settlements identified in CPL's damages spreadsheet are not recoverable damages. (See RMP's OPA Motion.)

CPL filed its own motion seeking an order that the OPA does provide an independent claim for contribution that is an alternative to CPL's tort claims. (See CPL's OPA Motion.) In that motion, CPL asks the court to hold that CPL has established its right to contribution from RMP and that the itemized categories of damages are recoverable from RMP. It asserts that the only step remaining under the OPA claim is to submit the claim to the jury to determine the percentage of fault to assign to RMP.

As discussed below, the court rejects RMP's position on the OPA, the tort claims, and proof of damages. And although the court finds that CPL's motion correctly states the law concerning contribution under the OPA, the court declines to grant all the relief CPL seeks.

## ANALYSIS

A court must grant summary judgment when the moving party "shows that there is no

5

genuine dispute as to any material fact" and that party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## CPL's OPA Claim for Contribution

The OPA makes a "responsible party" strictly liable for cleaning up and remediating harm resulting from an oil spill.  "[E]ach responsible party for a vessel or a facility from which oil is discharged [for example, an oil pipeline], . . . is liable for the removal costs and damages specified in subsection (b) of this section[6] that result from such incident."  33 U.S.C. § 2702(a).  The PHMSA designated CPL as the "responsible party" because CPL owns and operates the pipeline.  See id. § 2701(32)(E) (defining "responsible party" to include, "[i]n the case of a pipeline, any person owning or operating the pipeline.").  The OPA requires that, immediately after a spill, the pipeline owner assume initial responsibility for cleaning up the oil and remediating the damage.

In two different situations, the liability of a responsible party may be shifted completely to a third-party.  First, a third-party may be treated as the responsible party if the damages "were caused solely" by an action or omission of the third-party.  Id. § 2702(d)(1)(A).  In that situation, the third-party is substituted for the responsible party designated by the government agency.  Alternatively, the responsible party that pays the removal costs and damages up front may then pursue the third-party through subrogation to the rights of the United States government and individual claimants.  That section, titled "Subrogation of responsible party," requires that the

_____

[6]The following types of costs and damages are recoverable: removal costs, natural resources, real or personal property, subsistence use, revenues, profits and earning capacity, and public services.  33 U.S.C. § 2702(b).

6

spill be "caused solely by an act or omission of [the] third party[.]" Id. § 2702(d)(1)(B). CPL is not relying on those sections to recover its costs.

Instead, CPL seeks recovery of "removal costs" and "damages" under OPA Section 2709, entitled "Contribution," which provides in relevant part as follows:

> A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.

33 U.S.C. § 2709 (emphasis added). CPL reads that section, particularly the "under this Act" phrase, to incorporate traditional common law principles of comparative fault in a contribution action. In other words, CPL ultimately asks for reimbursement of the percentage of its costs that corresponds to the percentage of RMP's fault. RMP disagrees with CPL's interpretation.

RMP's OPA Motion

In RMP's OPA Motion, RMP asserts, under its interpretation of Section 2709, that CPL cannot establish a right to contribution under either "this Act" or "another law."

First, according to RMP, the language "under this Act" requires CPL to prove that RMP was the "sole cause" of the spill, but because CPL cannot meet that burden, that avenue of recovery is barred.[7] Second, RMP asserts that CPL cannot receive contribution under "another

_____

[7]RMP says it cannot be the "sole cause" because the following documents foreclose such a finding: (1) CPL's internal document titled "Incident or Near Miss Investigation—Why Tree Method," which, RMP asserts, concluded that CPL was a cause; and (2) PHMSA's Final Order, which found that CPL violated certain federal regulations. According to RMP, these documents establish "that CPL bore at least some, if not primary, blame for the spill and the resulting damages or removal costs." (RMP's OPA Motion at 3.) The court does not have to determine whether, based on those documents, RMP could not, as a matter of law, be the sole cause of the spill. As this order holds, CPL has a private cause of action for contribution under the OPA that does not hinge on whether the damages were "caused solely" by a third-party such as RMP.

law"—here, Utah state tort law—because the Utah Liability Reform Act (ULRA)[8] bars CPL's claim for recovery of costs under CPL's tort causes of action. For those reasons, RMP asks the court to dismiss CPL's OPA claim altogether.

CPL opposes RMP's interpretation of the OPA by making two points. First, the plain language of Section 2709, when read with the OPA's other third-party liability sections, requires an interpretation that "under this Act" refers to an independent right to recover from a third-party who was the partial cause, not the "sole cause," of the spill.

Second, CPL states that the phrase "another law" refers to a separate theory of liability—for example, contribution under state law—that is completely independent of the federal right to contribution. In other words, limitations in state law relied upon by RMP (the ULRA) do not carry over to the OPA claim because a <u>state</u> statute may not bar a <u>federal</u> claim. In response, RMP says that CPL misunderstands RMP's position:

> RMP has never asserted that the ULRA—with its comparative negligence regime—applies to CPL's [claim for contribution] under the OPA. Rather, the test for that claim is whether RMP was the 'sole cause' of the oil spill, an entirely different analysis. It is the OPA's plain statutory language that precludes a comparative fault analysis for the [OPA contribution claim], and not the ULRA.

(RMP's Opp'n to CPL's OPA Motion at iii, ECF No. 267.) Then, RMP's theory continues, with the OPA claim out (because CPL cannot establish "sole cause"), CPL is left to its state law claims which <u>are</u> governed, and barred, by the ULRA. (<u>See</u> RMP's OPA Motion at iii-iv.)

With that clarification, the court turns to the parties' competing interpretations of Section 2709. The key issue is whether the phrase "under this Act" allows a responsible party to recover

_____

[8]The ULRA is codified in Utah's statutory code at §§ 78B-5-817–78B-5-823.

a portion of its costs from a third-party found to be partially liable for damages arising from the spill (or, stated another way, whose acts or omissions were a partial cause of the spill). RMP claims that it does not.

RMP asks the court to interpret the OPA contribution provision so that "under this Act," CPL may only recover from a third-party when that third-party is solely responsible, in which case the third-party would owe CPL 100 percent of the recovery costs and damages. Any potential for partial recovery, RMP maintains, arises under "another law," such as Utah's tort law, which happens to have its own rules limiting recovery.

But adopting RMP's interpretation would render the clause "under this Act" meaningless and would violate the fundamental canon of statutory construction that "if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001), quoted in Rajala v. Gardner, 709 F.3d 1031, 1038 (10th Cir. 2013). Under RMP's interpretation, a responsible party would not need to bring a "civil action for contribution" under Section 2709 (i.e., "under this Act") when it could simply shift liability to the third-party through either Section 2702(d)(1)(A) (under which a third-party is substituted for the responsible party when the third-party is the sole cause) or Section 2702(d)(1)(B) (providing a right of subrogation to a responsible party to recover all costs from a third-party who was the sole cause). Under those sections, a responsible party may recover 100 percent of its costs.

Moreover, the plain language of Section 2709 contradicts RMP's strained interpretation. Congress titled Section 2709 "Contribution" and expressly authorized a "civil action for contribution." Traditionally, a civil action for contribution contemplates recovery of less than 100 percent of costs. Because the OPA does not define "contribution," the court looks to well-

settled common law to determine the meaning of that term.  Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1999 (2016), citing Sekhar v. United States, 133 S. Ct. 2720, 2724 (2013); Settoon Towing, LLC v. Marquette Transp. Co. (In re Settoon Towing, LLC), 859 F.3d 340, 347 (5th Cir. 2017).  Under common law, "contribution" has been defined as "[o]ne tortfeasor's right to collect from joint tortfeasors when, and to the extent that, the tortfeasor has paid more than his or her proportionate share to the injured party, the shares being determined as percentages of causal fault."  Black's Law Dictionary (10th ed. 2014) (emphasis added).

Even though the court interprets the statute's plain language to allow an independent right to contribution, legislative history also supports that conclusion.  Congressional records support the view that Congress intended the section to apply to third parties whose actions were a partial, rather than a sole, cause of the spill, and that such third-party liability arises under the OPA.  The Conference Report from the House of Representatives discusses Section 2709:

> The Conferees note that this section might come into play in an instance where more than one party is involved with a spill.  For example, a spill may occur when oil is being transferred between a vessel and an onshore facility.  If the discharge comes from the vessel, it is the vessel that will be the responsible party for purposes of the Conference substitute.  Nevertheless, if action or omission of the onshore facility contributed to the discharge, the operation of this section or section 1015 on subrogation could result in the facility being held accountable financially in part or in whole.

H.R. Conf. Rep. 101-653 (1990), at 111, reprinted in 1990 U.S.C.C.A.N. 779, 789 (emphasis added).[9]

---

[9]RMP points to legislative history stating that congressional intent in enacting the OPA was to internalize the costs of spills within the petroleum industry.  (See RMP's OPA Motion at 8 (citing S. Rep. No. 101-94, at 2 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 723).)  That history does not support the position that CPL can never seek recovery of damages from a third-party outside the industry. As CPL notes, "nothing in the statute or congressional record suggests

Recently, the Fifth Circuit, in Settoon Towing, LLC v. Marquette Transportation Company, addressed the same issue and came to the same conclusion. See 859 F.3d 340 (5th Cir. 2017). The plaintiff in Settoon sought contribution under the OPA from a third-party for a portion of costs incurred during clean-up of an oil spill. The defendant opposed, contending that Section 2709's phrase "under this Act" required a finding that the third-party was the sole cause of the discharge and resulting damages. It further contended that "another law" means that contribution is available under some other legal regime (maritime law in that instance) but that the claim would be subject to restrictions imposed by that law.

The Settoon court rejected the defendant's "sole cause" interpretation. Applying the same statutory construction rules, the court emphasized that "Section 2709 is solely about contribution, from title through content. It must contemplate that one tortfeasor may sue another for less than complete reimbursement, else the section is a nullity." Id. at 348 (emphasis added). The court of appeals held that a "Responsible Party [is] entitled to contribution for purely economic damages from a third party found to be partially liable."[10] Id. at 343. This court agrees

that Congress intended for OPA to exculpate third-party tortfeasors who cause, solely or partially, an oil spill. In fact, [Section 2702(d)'s] third-party liability provisions, [Section 2709's] contribution rights, as well as the plethora of cases . . . holding that pipeline owners may seek contribution from non-pipeline owners who caused or contributed to the oil" contradict RMP's argument. (CPL's Opp'n to RMP's OPA Motion at 26.)

[10]During the motion hearing, RMP contended that Settoon was wrongly decided for four reasons: (1) "The decision creates an irreconcilable conflict on liability standards within the OPA."; (2) "The 'another law' clause of Section 2709 is superfluous under Settoon's ruling."; (3) "The Settoon court erroneously confuses subrogation and contribution."; and (4) "The Settoon court misreads the plain meaning of 'potentially liable.'" The court quotes those points from PowerPoint slides presented by RMP to outline its argument. That document has been added to the case docket so that a written source of RMP's argument is available for reference. The court found RMP's interpretation strained and difficult to decipher. Rather than trying to articulate RMP's argument here, the court simply notes that RMP did not convince the court to

with the <u>Settoon</u> court's analysis.

For all of reasons set forth above, the court holds that OPA Section 2709 does create an independent statutory right to pursue contribution, as that term is traditionally defined (i.e., allocation of proportionate fault), against a liable, or potentially liable, third-party who may have been a partial cause of the spill.

### CPL OPA Motion

In CPL's motion for partial summary judgment, CPL asks the court to rule that CPL may recover "removal costs" and "damages," as those terms are defined in the statute[11] and as they are categorized in the damages spreadsheet; that the ULRA does not apply to CPL's OPA claim, and "that the only relevant matter remaining for the jury is apportionment of the OPA claim in direct proportion to RMP's fault." (CPL's OPA Motion at 2, ECF No. 225).

According to CPL, its motion establishes the following undisputed facts and conclusions of law: (1) it is the "responsible party" (as owner/operator of the pipeline); (2) the responsible party is strictly liable for "removal costs" and "damages"; (3) CPL incurred all of the costs listed in the spreadsheet under the OPA because the payments were made in its role as the "responsible party"; (4) all of the categories of damages fall within either the definition of "removal costs" or "damages"; and (5) CPL is seeking reimbursement from RMP for all of those costs under the OPA.

Although CPL attaches documents memorializing private party agreements, it does not provide pertinent documentation for other line items in the damages spreadsheet. And CPL does

---

change its conclusion or reject the <u>Settoon</u> court's analysis.

[11] <u>See</u> 33 U.S.C. § 2701(30)–(31); <u>id.</u> § 2702(b)(2)(A)–(F).

not indicate which statutory definition of damages each line item falls within. Accordingly, that decision must wait for the jury. The court limits its holding on CPL's OPA Motion to the conclusion that CPL may recover damages under the OPA regardless of whether the ULRA bars contribution under CPL's tort claims.[12]

## Settlement With Salt Lake City and With Private Parties

RMP asks the court to bar recovery of two distinct items listed in CPL's damages summary: (1) a payment to Salt Lake City for lost use of property, and (2) pre-lawsuit payments made to private parties. RMP first argues that these amounts must be dismissed because CPL can only recover under the OPA if RMP was the sole cause of the spill and that otherwise the ULRA bans the claims. But that theory has already been rejected by the court. Accordingly, RMP's request to dismiss those two line-items is denied.

## State Law Claims

### Utah Liability Reform Act (ULRA)

RMP asks for dismissal because the ULRA says that a "defendant is not entitled to contribution from any other person." Utah Code Ann. § 78B-5-820(2). RMP assumes that CPL's state law claims for recovery of costs are, by their nature, really one claim for contribution. But CPL asserts claims for negligence, trespass, and nuisance[13] in its capacity as a

---

[12]Given the court's holding that the OPA provides an independent right to contribution, the court will not address CPL's arguments about whether a federal common law right to contribution exists and whether the reverse-Erie doctrine applies.

[13]RMP contends that CPL's trespass and nuisance claims should be dismissed "because they are simply restated negligence claims." (RMP's OPA Motion at 12.) At this point, nothing prohibits CPL from alleging alternative legal theories. The court declines to dismiss the claims on that basis.

third-party plaintiff against third-party defendant RMP.  Given the procedural posture, the

ULRA's limitation on contribution claims—which affects co-defendants who wish to transfer

responsibility for a portion of the plaintiff's recovery—does not apply.[14]

Trespass

A person is liable for trespass when he "'intentionally . . . enters land in the possession of

the other, or causes a thing or a third person to do so . . . .'"  Carter v. Done, 276 P.3d 1127, 1137

(Utah 2012) (McHugh, J., dissenting) (quoting Restatement (Second) of Torts § 158 (1965)).  In

its trespass cause of action, CPL alleges that

> (a) CPL rightfully possessed a pipeline easement on the U of U property; (b) RMP
> wrongfully entered onto CPL's pipeline easement and violated CPL's other
> possessory rights when an electrical arc from its electrical facility came into
> physical contact with and damaged CPL's pipeline; (c) RMP intended to perform
> the acts that resulted in the electrical arc's wrongful entry onto CPL's pipeline
> easement; (d) RMP had no right to wrongfully enter CPL's pipeline easement; and
> (e) RMP's trespass caused damage to CPL's pipeline, which led to the oil spill
> and CPL's economic losses in the form of clean-up costs, homeowner claims, and
> other damages.

(Am. Counterclaim ¶¶ 36–40.)

RMP contends that CPL cannot prevail because it cannot prove that RMP intentionally

created the arc.[15]  RMP cites to a CPL expert's theory that "branches came into contact with

---

[14]The court denies RMP's request to hold at this stage that CPL does not have standing to
assert trespass or nuisance claims caused by oil spilling onto others' property.  (See RMP's OPA
Motion at 13 ("[T]respass and nuisance claims relate and are limited to the damages specific to
CPL's easement property rights, not the property of others.").)  The court does not have enough
information about the damages CPL seeks under its tort theories.

[15]RMP also notes that it "had a valid easement to construct the electrical transmission
station within CPL's [non-exclusive] easement . . ." and so the ETS is not an invasion of CPL's
easement.  (RMP's OPA Motion at 9.)  CPL responds that RMP built its ETS directly on top of
CPL's underground pipeline before RMP received its easement.  (See CPL's Opp'n to RMP's
OPA Motion at 8–9, 29, ECF No. 268.)  In the summary judgment context, the court makes all

RMP's spare terminator, which resulted in the arc traveling down the fence post and contacting CPL's pipeline." (RMP's OPA Motion at 10 (citing Neuhalfen Report, attached at Ex. H).) That, RMP says, "contradicts any notion that RMP <u>intentionally</u> entered the land or caused the arc." (<u>Id.</u> (emphasis in original).)

But "[t]he essential element of trespass is physical invasion of the land." <u>Walker Drug Co., Inc. v. La Sal Oil Co.</u>, 972 P.2d 1238, 1243 (Utah 1998). "'In order to be liable for a trespass on land . . . , it is necessary only that the actor <u>intentionally be upon any part of the land in question.  It is not necessary that he intended to invade the possessor's interest</u> in the exclusive possession of his land and, therefore, that he knows his entry to be an intrusion.'" <u>Gallegos v. Lloyd</u>, 178 P.3d 922, 926 (Utah Ct. App. 2008) (emphasis added) (quoting Restatement (Second) of Torts § 164 cmt. a (1965)).

The case law does not require a finding that RMP intentionally created the arc.  CPL says it can establish a claim for trespass because RMP intentionally placed the ETS in CPL's easement in close proximity to the pipeline, which ultimately resulted in the arc's entry onto the easement.  The court agrees that a reasonable jury could find that the intentional placement of the ETS within CPL's easement was an intentional act that culminated in the arc reaching the pipeline.  Accordingly, RMP's motion to dismiss the trespass claim on the merits is denied.

<u>Nuisance</u>

The elements of a nuisance claim are (1) a substantial nontrespassory invasion of the private use and enjoyment of a real property interest (in this case, a pipeline easement),

---

reasonable inferences in favor of CPL, the non-moving party.  At this point, the court considers the placement of the ETS as an invasion of CPL's easement.

(2) caused by the defendant or for which the defendant was responsible, and (3) the invasion was either intentional and unreasonable or unintentional and otherwise actionable. Whaley v. Park City Mun. Corp., 190 P.3d 1, 9 (Utah Ct. App. 2008) (citing Utah Code Ann. § 78-38-1, renumbered as § 78B-6-1101); Turnbaugh v. Anderson, 793 P.2d 939, 942 (Utah Ct. App. 1990) ("A private nuisance is generally defined as a substantial and unreasonable nontrespassory interference with the private use and enjoyment of another's land.").

According to CPL, the action constituting the nuisance was the combination of the placement, construction, and maintenance of the ETS with the resulting electrical arc completing the act of interference. "These were all intentional acts that ultimately resulted in RMP blowing a hole in CPL's pipeline." (CPL's Opp'n to RMP's OPA Motion at 9, 29.)

RMP makes much of the fact that the arc physically contacted the pipeline, and its argues that such an occurrence is inconsistent with the nontrespassory nature of a nuisance claim. But RMP's distinction between a physical and a non-physical interference makes no difference. That is demonstrated in Branch v. Western Petroleum, Inc., 657 P.2d 267 (Utah 1982), in which the nuisance was migration of polluted water which physically interfered with the neighboring property's culinary water wells. "Unlike most other torts, [nuisance] is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded." Id. at 274.

RMP's objection to the nuisance claim—that the alleged act was a physical invasion that does not fall within the nontrespassory nature of nuisance—is not supported by the case law. Accordingly, the court declines to dismiss the nuisance claim on that basis.

**Proof of Damages**

In RMP's Damages Motion, RMP asserts that CPL has failed to prove damages under either federal or state law because it does not have expert witness testimony to establish that the damages were "reasonable and necessary." That, according to RMP, is a complete failure of proof, and CPL will not as a matter of law be able to meet its evidentiary burden at trial. The court disagrees.

State Law Tort Claims

The general standard of proof of damages in Utah is straightforward. The law requires "evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." Atkin Wright & Miles v. Mountain States Tel. & Tel. Co., 709 P.2d 330, 336 (Utah 1985) (emphasis added), quoted in TruGreen Cos., LLC v. Mower Bros., Inc., 199 P.3d 929, 930–33 (Utah 2008). According to language used in model jury instructions for Utah, a jury determines whether the evidence provides a "reasonable estimate" of damages that will "fairly and adequately compensate" the plaintiff. See Model Utah Jury Instruction (MUJI) CV2001 ("If you decide that [defendant]'s fault caused [plaintiff]'s harm, you must decide how much money will fairly and adequately compensate [plaintiff] for that harm.") (emphasis added); MUJI CV2002 ("if [plaintiff] has proved that [he] has been damaged and has established a reasonable estimate of those damages, [defendant] may not escape liability because of some uncertainty in the amount of damages.") (emphasis added); MUJI CV2003 ("Economic damages are the amount of money that will fairly and adequately compensate [plaintiff] for measurable losses of money or property caused by [defendant]'s fault.") (emphasis added).

RMP nevertheless contends that the complexity and sheer volume of CPL's alleged

damages require an expert witness to walk the jury through CPL's claim for $30 million and establish the reasonableness and necessity of those damages. The case law cited by RMP does not expressly impose such a requirement.

RMP provides examples of Utah cases where an expert witness was used to establish the amount of damages. See, e.g., Hale v. Big H Constr., Inc., 288 P.3d 1046, 1054 (Utah Ct. App. 2012) (using "expert testimony and evidence of industry averages to verify [documentation of actual costs] and establish that the costs were reasonable."); Ault v. Dubois, 739 P.2d 1117, 1120 (Utah Ct. App. 1987) (addressing dispute about the measure of damages to real property, court discussed expert evidence on "the cost of repairs" which was provided "to the exclusion of evidence of the diminution in value"). But those cases do not stand for the proposition that a "reasonable and necessary" opinion from an expert witness is always required.

RMP also cites to Utah cases in which medical expenses were claimed as damages. In those cases the Utah courts did require proof through an expert witness that the medical expenses were "reasonable and necessary." See, e.g., Wilson v. IHC Hosps., Inc., 289 P.3d 369, 382 (Utah 2012) ("Upon proof of liability, a plaintiff may recover medical expenses that are reasonable and necessary."); Gorostieta v. Parkinson, 17 P.3d 1110, 1117 (Utah 2000) ("It is a general rule that the foundation to establish the reliability of medical expenses is to provide evidence of reasonableness and necessity."); see also MUJI CV2005 ("Economic damages include reasonable and necessary expenses for medical care and other related expenses[.]"). While that standard exists in the context of medical expense damages, there is no per se rule and no "reasonable and necessary" term of art in cases addressing proof of other types of damages.

Certainly, when a subject is beyond the common knowledge of a lay person, that

information must be presented through an expert witness.  But that determination is made on a case-by-case basis.

Here, the scope of CPL's response to the oil spill is indeed beyond the common knowledge of a lay jury.  In this particular case, an expert witness will be required to testify about certain aspects of the costs incurred by CPL.

CPL notes that it has an expert witness (Dr. Owens) whose testimony will be supplemented by fact witnesses and documentation.[16]  But CPL correctly emphasizes that no particular formula governs how CPL must use that witness.  "[T]here is great flexibility in how CPL can prove damages, which are inherently a question for the jury."  (CPL's Opp'n to Damages Motion at 2, ECF No. 261.)  See, e.g., Lompe v. Sunridge Partners, LLC, 81 F.3d 1041, 1062 (10th Cir. 2016) ("[T]he fact-finding function of the jury . . . encompasses questions of

---

[16]RMP contends that because Dr. Owens' report was submitted as rebuttal to one of RMP's expert reports, CPL may not testify about that issue in CPL's case-in-chief.  RMP further argues that under Federal Rule of Civil Procedure 37 he may not be treated as an affirmative expert witness because the March 2017 report was submitted after the September 2016 deadline for expert reports.  To do so, RMP asserts, would be a violation of Rule 26.  Relying on Rule 37, which generally bars testimony of a witness that should have been disclosed under Rule 26(a) or (e), RMP argues that, as a result of the discovery violation, CPL essentially has no expert witness testimony on damages.

During the hearing, CPL pointed out that Rule 37 allows an untimely-disclosed expert to testify when the violation of Rule 26 was "harmless."  Fed. R. Civ. P. 37(c)(1).  In response, counsel for RMP initially conceded that RMP would be hard-pressed to argue prejudice, but, during the rebuttal argument, counsel briefly stated without explanation that RMP would be prejudiced because it could not develop an expert to address Dr. Owens' opinion.

The court notes that CPL disclosed Dr. Owens' report (dated March 13, 2017) to RMP in the spring of 2017.  After receiving the report, RMP deposed Dr. Owens on April 25, 2017, and questioned him about opinions in his report that CPL relies upon now.  (See Ex. 5 to Damages Motion, ECF No. 261-5.)  Trial is scheduled for September 2017.  Given the circumstances, the court has nothing concrete in the record to establish prejudice.  Accordingly, CPL may rely on Dr. Owens' opinion at trial.

liability and the amount of compensatory damages."); USA Power, LLC v. PacifiCorp 372 P.3d 629, 659 (Utah 2016) ("[J]uries are generally allowed wide discretion in the assessment of damages[.]") (quoting Hess v. Canberra Dev. Co., LC, 254 P.3d 161, 171 (Utah 2011)).

CPL intends to use Dr. Owens' opinion along with other evidence to prove damages. According to CPL, Dr. Owens "will provide testimony regarding the appropriateness of the type and amount of resources expended after the spill, the process by which contractors were engaged and resources were expended, whether costs were consistent with industry standards, and whether costs were as expected for a[n] oil spill of that scale and scope, which goes to the reasonableness and necessity of the expenses incurred." (CPL's Opp'n to Damages Motion at 5–6.)

RMP, in response to that, questions the sufficiency of CPL's proffered evidence, arguing that even if CPL were to use Dr. Owens's testimony, his opinion would not be helpful because he did not review, much less analyze, the cost documentation. (See Reply Supp. Damages Motion at viii, ECF No. 276 (challenging CPL's expert witness's opinion because it does not analyze the "complex web of almost $30 million in expenses").) For instance, RMP expresses concern about Dr. Owens' statement in his rebuttal report that "[t]here is never an 'excess' of resources in an oil spill response . . . ." (Owens Rebuttal Rep. at 5–6, attached as Ex. F to Reply Supp. Damages Motion, ECF No. 276-6.) Pointing to that language, RMP says "[t]hat is the antithesis of analysis and a disregard of principles of reasonableness and necessity." (Damages Motion at 9.) But sufficiency of the evidence is the jury's province, and the court will not dismiss the damage claim on that basis.

Federal OPA Claim

The standard and method of proof that RMP advocates is not applicable to CPL's federal OPA claim for costs. Although RMP asserts that the federal standard mirrors the state common law standard, CPL has shown that the standard is established by the OPA, its implementing regulations, and federal cases interpreting the OPA. (<u>See</u> CPL's Supplemental Br. in Opp'n to Damages Motion, ECF No. 287.) Furthermore, RMP has not pointed to statutory language in the OPA, its implementing regulations, or cases interpreting the OPA that expressly require use of an expert witness to testify about the reasonableness and necessity of the removal costs incurred under direction of the government. For those reasons, RMP has not satisfied its summary judgment burden to show that CPL's OPA claim must be dismissed as a matter of law for a complete failure of proof of damages.

## ORDER

For the reasons set forth above, the court orders as follows:

1.     Rocky Mountain Power's Motion for Summary Judgment on Plaintiff CPL's Oil Pollution Act, Negligence, Trespass, and Nuisance Claims (ECF No. 236) is DENIED;

2.     Chevron Pipe Line's Motion for Partial Summary Judgment on Chevron Pipe Line Company's Oil Pollution Act Claim (ECF No. 225) is GRANTED IN PART and DENIED IN PART; and

3.     Rocky Mountain Power's  Motion for Summary Judgment For Failure to Prove

the Amount of Damages (ECF No. 237) is DENIED.

SO ORDERED this 4th day of August, 2017.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge